IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TANSEL CARIMANDO, | ) | Civil No. 24-00521 DKW-KJM |
| | ) | |
| Plaintiffs, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT |
| vs. | ) | DEFENDANT CHECKR, INC.'S |
| | ) | MOTION TO COMPEL |
| CHECKR, INC., and UBER | ) | ARBITRATION AND STAY |
| TECHNOLOGIES, INC., | ) | PROCEEDINGS |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT CHECKR, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

On February 11, 2025, Defendant Checkr, Inc. ("Defendant Checkr"), filed a Motion to Compel Arbitration and Stay Proceedings ("Motion"). ECF No. 36. On February 17, 2025, pro se Plaintiff Tansel Carimando ("Plaintiff") filed a Response to the Motion ("02/17/2025 Response").[1] ECF No. 38. On February 26, 2025, Defendant Checkr filed a Notice of Errata regarding the Declaration of Jamie Fong in Support of the Motion. ECF No. 41. On March 7, 2025, Defendant Uber

---

[1] Plaintiff filed the 02/17/2025 Response before the Court issued a briefing schedule on the Motion. ECF No. 38. On February 20, 2025, the Court issued an entering order setting the briefing schedule for the Motion and stating that the Court would not permit any further briefing on the Motion from Plaintiff ("02/20/2025 EO"). ECF No. 39. On March 3, 2025, Plaintiff filed another Response to the Motion ("03/03/2025 Response"), in violation of the 02/20/2025 EO. ECF No. 45. The Court subsequently struck the 03/03/2025 Response. ECF No. 56.

Technologies, Inc. ("Defendant Uber"), filed a Notice of Non-Opposition to the Motion. ECF No. 47. On March 19, 2025, Defendant Checkr filed a Reply. ECF No. 51.

The Court elected to decide this matter without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii. ECF No. 39. After carefully considering the parties' submissions, applicable law, and record in this case, the Court FINDS AND RECOMMENDS that the district court GRANT the Motion for the reasons set forth below.

## BACKGROUND

I.  Factual Background

Plaintiff alleges that he applied for a job with Defendant Uber. ECF No. 1-2 at 4 ¶ 7. Defendant Checkr provides background check reports for companies, such as Defendant Uber. ECF No. 41 at 6 ¶ 3. Defendant Checkr provided Defendant Uber a background check report regarding Plaintiff, which Plaintiff asserts contained inaccurate information. ECF No. 1-2 at 4 ¶ 8. Plaintiff alleges that he was subsequently denied employment by Defendant Uber and other companies. *Id.* at ¶ 9. This case concerns Plaintiff's alleged injuries that resulted from Defendant Checkr's alleged inaccurate background check report.

On October 2, 2024, Plaintiff uploaded a copy of his driver's license to Defendant Checkr's "platform." ECF No. 41 at 9 ¶ 11. On October 3, 2024, Plaintiff accessed Defendant Checkr's "online Candidate Portal" to view his background check report. *Id.* at 7 ¶ 6. To confirm his identity and enter the portal, Plaintiff was required to enter his personal identifying information, including his social security number and date of birth. *Id.* Plaintiff was also required to agree to Defendant Checkr's terms of service ("TOS"). *See id.* ¶ 7. The portal presented a page that read: "Before proceeding, please read through Checkr's Terms of Service below and click the checkbox to acknowledge your agreement." *Id.* at 8 ¶ 8, 11 (Exhibit 1). Directly below this instruction was a scrollable version of the TOS. *See id.* at 11. At the bottom of the page, a checkable box appeared with the statement: "By checking this box, I agree to Checkr's Terms of Service (set forth above), as well as Checkr's Privacy Policy." *Id.* Plaintiff claims that he did not agree to any terms of service. ECF No. 38 at 2. Defendant Checkr's records, however, indicate that Plaintiff consented electronically to the TOS on October 3, 2024. ECF No. 41 at 8 ¶ 9, 25.

The TOS contained an arbitration provision that reads, in relevant part:

> In exchange for the benefits of the speedy, economical, and impartial dispute resolution procedure of arbitration, You and Checkr mutually agree to give up our right to resolve disagreements in a court of law by a judge or jury, and, as described below, agree to binding and final arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

3

> You and Checkr agree that this arbitration agreement is governed by the Federal Arbitration Act, and shall survive even after these Terms or any Services terminate.

*Id.* at 21.

The agreement further provided that it applies, with certain enumerated exceptions, to "any disagreement, claim, or controversy arising out of or relating in any way to these Terms (including its enforcement, breach, performance, interpretation, validity, or termination), or Your access to and/or use of the Services, or the provision of content, services, and/or technology on or through the Services." *Id.* "Services" under the TOS includes, among other things, obtaining, delivering, and managing background reports and related documentation; obtaining status information regarding background reports; Defendant Checkr's processes for generating background reports and resolving potential inaccuracies; and any disputes relating to a background check. *Id.* at 7 ¶ 7, 13.

The TOS allows individuals to opt out of the arbitration agreement within 30 days of agreeing to the TOS. *Id.* at 8 ¶ 10, 23. Defendant Checkr has no record of receiving any written notice of opt-out from Plaintiff. *Id.* at 8 ¶ 10.

Lastly, the TOS included warnings about the impact of the arbitration agreement. The first page of the TOS contains the following bold, capitalized warning:

> **IMPORTANT NOTICE:  THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER.  IT AFFECTS YOUR LEGAL RIGHTS UNLESS YOU OPT OUT, AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW.  PLEASE READ CAREFULLY.**

*Id.* at 13.  The beginning of the arbitration provision section contains the following warning:

> PLEASE READ THIS SECTION CAREFULLY — IT AFFECTS YOUR LEGAL RIGHTS AND GOVERNS HOW YOU AND CHECKR CAN BRING CLAIMS AGAINST EACH OTHER. THIS SECTION WILL, WITH LIMITED EXCEPTION, REQUIRE YOU AND CHECKR TO SUBMIT CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, GROUP OR REPRESENTATIVE ACTION IN COURT.

*Id.* at 21.

II.   Procedural Background

Plaintiff filed a Complaint against Defendants Uber and Checkr in the Circuit Court of the Third Circuit, State of Hawaii.  ECF No. 1-2 at 2–7.  On December 10, 2024, Defendant Checkr removed this case to federal court.  ECF No. 1.  Plaintiff asserts three causes of action in the Complaint:  (1) Negligence against Defendant Checkr; (2) Violation of the Fair Credit Reporting Act against Defendant Checkr; and (3) Negligence against Defendant Uber.  ECF No. 1-2 at 4–6.

On December 13, 2024, Plaintiff and Defendant Uber submitted a Joint Stipulation to Binding Arbitration and Stay Proceedings ("Joint Stipulation"). ECF No. 9. Therein, Plaintiff agreed to submit his claims against Defendant Uber to arbitration and stay such claims pending resolution of the arbitration. That same day, the Court approved the Joint Stipulation. ECF No. 10. Plaintiff's claims against Defendant Uber remain stayed. ECF Nos. 19, 44.

In December 2024 and January 2025, Defendant Checkr's counsel asked Plaintiff to stipulate to submit his claims against Defendant Checkr to arbitration pursuant to the TOS. ECF No. 36-3 at 2–3 ¶¶ 3, 5 (citing *id.* at 4–6 (Exhibit A), 12–15 (Exhibit C)). To date, Plaintiff has not agreed to submit his claims against Defendant Checkr to arbitration. *Id.* at 3 ¶ 6.

On February 11, 2025, Defendant Checkr filed the instant Motion.

## DISCUSSION

I.   Defendant Checkr's Request for Judicial Notice

As a preliminary matter, the Court addresses Defendant Checkr's request for the Court to take judicial notice of six court opinions from other jurisdictions that have enforced the arbitration agreement in this case. ECF No. 36 at 9 n.1. Plaintiff does not address this request in his response to the Motion.

Federal Rule of Evidence 201 provides that courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known

6

within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In addition, Rule 201 governs judicial notice of only adjudicative facts. Fed. R. Evid. 201(a). "Adjudicative facts are simply the facts of the particular case." *Id.* (note to Fed. R. Evid. 201(a) in advisory committee notes (1975)). Courts should exercise caution when taking judicial notice of adjudicative facts because "judicial notice dispenses with traditional methods of proof." *McAllister v. Adecco Grp. N.A.*, CIVIL No. 16-00447 JMS-KJM, 2017 WL 11151053, at *2 (D. Haw. Nov. 9, 2017) (internal quotation marks and some citations omitted) (citing *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) ("Because the effect of judicial notice is to deprive a party of an opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b).")).

Here, the Court finds that judicial notice is improper. Defendant Checkr asks the Court to treat prior court decisions enforcing the same arbitration provision as indisputable, adjudicative facts. The Court cannot do so because the decisions contain legal conclusions that cannot be judicially noticed under Rule 201. The Court can, however, consider these decisions as persuasive authority in

support of the Motion without taking judicial notice of them.  Based on the foregoing, the Court denies Defendant Checkr's request for judicial notice.

II.     The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.  In deciding a motion to compel arbitration, a district court's role is limited to determining (1) whether a valid agreement to arbitrate exists and, if so, (2) whether that agreement encompasses the dispute.  *Munro v. Univ. of S. California*, 896 F.3d 1088, 1091 (9th Cir. 2018) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

The party seeking to compel arbitration has the burden to prove the existence of an agreement to arbitrate by a preponderance of the evidence.  *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citations omitted).  "If the court is 'satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'"  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4).  If, however, "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall

proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4). "In applying this language, district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Id.* (citing cases).

Rule 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

To determine whether a valid agreement to arbitrate exists under the FAA, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). "[A]greements to arbitrate [may] be invalidated by generally appliable [state-law] contract defenses" to enforceability such as "fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001) (citations and internal quotations marks omitted).

III.   A Valid Agreement to Arbitrate Exists

Under Hawaii law, there are three elements to a valid arbitration agreement: "(1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration." *Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 531, 135 P.3d 129, 140 (2006) (citation omitted).  "With respect to the second requirement, 'there must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract.'" *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 447, 312 P.3d 869, 879 (2013) (emphasis omitted) (quoting *Douglass*, 110 Haw. at 531, 135 P.3d at 140).  "The existence of mutual assent or intent to accept is determined by an objective standard . . . ." *Id.* (quoting *Douglass*, 110 Haw. at 531, 135 P.3d at 140).

"The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists between the parties." *Id.* at 446, 312 P.3d at 878 (citation omitted).  If the moving party satisfies this initial burden, "the burden shifts to the opposing party to present evidence on its defenses to the arbitration agreement." *Id.* (citation and internal quotation marks omitted).

Here, the Court finds that all three elements of a valid arbitration agreement are present.  First, the arbitration provision is part of the written TOS.  ECF No. 41

at 8 ¶ 9, 21–23.  The Court thus finds that the parties have an arbitration agreement in writing.

Second, the Court finds that the arbitration provision is unambiguous as to the parties' intent to submit disputes or controversies to arbitration.  The provision states that "any disagreement, claim, or controversy arising out of or relating in any way to these Terms . . . or Your access to and/or use of the Services[] . . . shall be resolved by final and binding arbitration to the fullest extent allowed by law."  ECF No. 41 at 21.  In addition, the provision states that the parties "mutually agree . . . to give up [their] right to resolve disagreements in a court of law . . . and . . . agree to binding and final arbitration pursuant to the [FAA]."  *Id.*  This language unambiguously reflects an intent of the parties to submit disputes or controversies to arbitration.  *See Doyle v. Hawaiian Cement*, Civil No. 08-00017 JMS/KSC, 2008 WL 2230734, at *5 (D. Haw. May 29, 2008) (citations omitted) (finding that "using contractual terms such as 'any controversy,' 'shall be subject to,' and 'final and binding arbitration'. . . unambiguously expresses an intent of the parties to submit . . . disputes to arbitration").

In addition, the Court finds that Plaintiff assented to the TOS and the arbitration agreement contained therein by clicking the checkbox to accept the TOS and proceeding to the online portal.  "Electronic agreements where a customer must affirmatively click a box on a website acknowledging receipt of and

11

assent to the contract term before he or she is allowed to proceed using the website are commonly known as 'clickwrap' agreements." *Durrett v. ACT, Inc.*, 130 Haw. 346, 310 P.3d 1047, *4 n.6 (Haw. Ct. App. 2011). "Courts routinely enforce clickwrap[]" agreements. *Id.* (citing cases). Plaintiff's assent to the clickwrap agreement is sufficient to indicate his intent to be bound by the TOS and the arbitration provision. The Court further finds that Plaintiff manifested his intent to be bound to the arbitration provision by not opting out despite being on notice of his opt-out rights.

     Third, bilateral consideration exists, as the parties mutually assented to arbitration. *See* ECF No. 41 at 21 ("In exchange for the benefits of the speedy, economical, and impartial dispute resolution procedure of arbitration, You and Checkr mutually agree to give up our right to resolve disagreements in a court of law by a judge or jury, and, as described below, agree to binding and final arbitration pursuant to the [FAA]."). "That is, the parties both agreed to 'forego their respective rights to a judicial forum, given the delay and expense which results from the use of the federal and state court systems, in order to benefit from the resulting time and cost savings' of arbitration." *Loftus v. H&R Block*, CIV. NO. 20-00568 JMS-KJM, 2021 WL 4437491, at *3 (D. Haw. Sept. 27, 2021) (quoting *Brown v. KFC Nat'l Mgmt. Co.*, 82 Haw. 226, 239–40, 921 P.2d 146, 159–60)).

Based on the foregoing, the Court finds that Defendant Checkr satisfies its initial burden of establishing that an arbitration agreement exists between the parties.

Plaintiff does not assert that the arbitration provision is unconscionable or the result of fraud or duress. *AT&T Mobility*, 563 U.S. at 339. Plaintiff argues, however, that he has not "agreed to any terms of service that include an arbitration clause with [Defendant] Checkr. The mere provision of a link to a website does not constitute an agreement . . . ." ECF No. 38 at 2. The crux of Plaintiff's argument is that "there is no evidence of mutual assent between Plaintiff and [Defendant] Checkr regarding arbitration." *Id.* Plaintiff's conclusory arguments do not create a genuine issue of material fact as to the existence of a valid arbitration agreement. *Matsushita*, 475 U.S. at 586–87 (citations and emphasis omitted) (explaining that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and must set forth "specific facts showing that there is a genuine issue for trial"). Specifically, Plaintiff does not present any evidence to refute Defendant Checkr's assertions that Plaintiff assented to the TOS on October 3, 2024 and failed to opt out of the arbitration agreement. The Court thus finds that Plaintiff fails to show that the arbitration agreement is invalid and unenforceable.

Although the Court struck Plaintiff's 03/03/2025 Response, for the sake of completeness, the Court notes that the 03/03/2025 Response does not present any evidence to create a genuine issue of material fact as to the existence of a valid arbitration agreement.  In the 03/03/2025 Response, Plaintiff states that he did not "check any box agreeing to [Defendant Checkr's] TOS."  ECF No. 45 at 2.  In support of his argument, Plaintiff submits unauthenticated screenshots of his purported view of the online portal after signing in, which do not show the TOS or the checkbox.  ECF Nos. 45-1–45-8.  In the Reply, Defendant Checkr explains that the online portal does not display the TOS and checkbox again when, as here, the consumer previously agreed to the TOS and Defendant Checkr has not updated the TOS since that time.  ECF No. 51 at 4 (citing ECF No. 51-1 at 2 ¶¶ 3–4).

Even considering the evidence in the light most favorable to Plaintiff, Plaintiff's arguments are insufficient to create a genuine issue of material fact because no reasonable jury could find in Plaintiff's favor based on the evidence. *See Miller*, 454 F.3d at 988; *Matsushita*, 475 U.S. at 587.  The 03/03/2025 Response and Defendant Checkr's explanation of the screenshots attached thereto confirm that Plaintiff indeed accessed the online portal to view the status of his background check.  This access was only possible after Plaintiff agreed to the TOS, thereby supporting Defendant's argument rather than creating a factual dispute.

In addition, Plaintiff argues that he did not have reasonable notice of the TOS, "as evidenced by the steps taken to access the Candidate Portal." ECF No. 45 at 4. This argument does not create a genuine issue of material fact because the evidence shows that Plaintiff was reasonably on notice of the TOS when he assented to the clickwrap agreement. *See* ECF No. 41 at 11. The TOS alerted Plaintiff to the presence of the arbitration clause in bold and capitalized lettering at the beginning of the agreement. *Id.*

Lastly, Plaintiff takes issue with the IP address from which Defendant Checkr's records indicate Plaintiff agreed to the TOS. Plaintiff argues, without supporting evidence, that the IP address "is registered to a data center and could be used by multiple users, raising questions about the validity of Checkr's claims regarding consent." ECF No. 45 at 2–3. Defendant Checkr argues that Plaintiff's argument is speculative and does not create a genuine issue of material fact. ECF No. 51 at 5. The Court agrees. Plaintiff presents no evidence to substantiate his claims regarding the IP address.

In sum, even if the Court considered the 03/03/2025 Response, the Court would reach the same conclusion: Plaintiff's arguments do not create a genuine issue of material fact as to the existence of a valid arbitration agreement.

IV.   The Arbitrator Must Decide Whether the Arbitration Agreement Covers Plaintiff's Claims

Defendant Checkr argues that the court should not decide the issue of whether the arbitration agreement covers Plaintiff's claims because the parties agreed to delegate it to the arbitrator.  ECF No. 36 at 20–22.  The Court agrees.

Parties can agree to arbitrate issues of "arbitrability," such as "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted).  "When the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (other citation omitted) (citing *Rent-A-Ctr.*, 561 U.S. at 68–70).

Here, the arbitration provision included the following "delegation clause":

> If there is a disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement), You and Checkr agree that this threshold disagreement shall be delegated to the arbitrator (not a court) and that the arbitrator shall have initial authority to resolve such threshold disagreements.

ECF No. 41 at 21.  "This language is in line with delegation clauses that have been held to clearly and unmistakably demonstrate an agreement to arbitrate arbitrability." *Robbins v. Checkr, Inc.*, Case No. 19-cv-05717-JST, 2020 WL

16

4435139, at *4 (N.D. Cal. July 30, 2020) (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (delegating to arbitrator "the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision'"); *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 WL 4334770, at *4–7 (N.D. Cal. Sept. 11, 2018) (delegating to arbitrator "issues relating to the scope and enforceability of this arbitration agreement")). The Court thus finds that the delegation clause clearly and unmistakably demonstrates that the parties agreed to delegate the issue of whether the provision covers Plaintiff's claims to the arbitrator.

Based on the foregoing, because a valid arbitration agreement exists in the TOS and it delegates the issue of whether the agreement covers Plaintiff's claims to the arbitrator, the Court finds that Plaintiff's claims against Defendant Checkr are subject to arbitration and recommends that the district court grant the Motion.

V.   Defendant's Request to Stay Proceedings

Defendant Checkr asks the Court to stay this proceeding pending the outcome of the arbitration. ECF No. 36 at 24. When a federal court finds that a dispute is subject to arbitration and a party has requested a stay of the court proceeding pending arbitration, the FAA compels the court to stay the proceeding. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (citing 9 U.S.C. § 3). The Court thus

recommends that the district court stay Plaintiff's claims against Defendant Checkr pending resolution of the arbitration.

## CONCLUSION

Based on the foregoing, the Court FINDS AND RECOMMENDS that the district court GRANT Defendant Checkr, Inc.'s Motion to Compel Arbitration and Stay Proceedings (ECF No. 36).  The Court RECOMMENDS that the district court order Plaintiff to arbitrate his claims against Defendant Checkr in accordance with the arbitration provision in Defendant Checkr's Terms of Service.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, April 29, 2025.



Kenneth J. Mansfield
United States Magistrate Judge

*Carimando v. Checkr, Inc., et al.*, Civil No. 24-00521 DKW-KJM; Findings and Recommendation to Grant Defendant Checkr, Inc.'s Motion to Compel Arbitration and Stay Proceedings